No. 4.—THOMAS WILLIS, plaintiff in error, vs. ROBERT V. WILLIS, adm'r, &c. defendant in error.

[1.] The Court cannot be said to charge upon a hypothetical state of facts, when there is any evidence, whatever, to authorize the charge.

[2.] Though there be a preponderance of testimony against the verdict, yet, a new trial will not be granted, unless the Court believe the verdict to be decidedly and strongly against the weight of evidence.

Trover, in Baldwin Superior Court.   Decision by Judge JACKSON, at August Term, 1854.

This was an action of trover by Robert V. Willis, as adm'r of Keziah Willis vs. Thomas Willis, for sundry negroes, the descendants of a negro woman, Esther.   It was proven that Keziah Willis died in possession of the negroes, and had them in possession for twenty years.   Keziah Willis and Thomas Willis (her son) lived on the same premises, but in different houses, and had separate fields.   Thomas Willis had a general control of all the property.   Mrs. Willis employed a separate overseer for one year.   The negroes sometimes worked all the

fields.   Various expressions of intention by Mrs. Willis, to give these negroes to different persons, were in evidence.   The negro Esther was in Alabama, and Thomas Willis went after her and brought her away.   He proved by one Isaac Golden, that 17 or 18 years ago, he heard Mrs. Willis say that she owned a negro Esther, in Alabama, and that she told Tom, that "if he would go after her he might have her;" and that after Tom got back, he heard the old lady say that Tom had gotten back with the negro that she gave him.   There was evidence that Mrs. Willis, at some times, said she gave the negro to Tom at her death; at others, that she intended him to have them; at others, that she intended them for a daughter in Alabama; but that the daughter had died.   There was also in evidence a deed of gift, from Mrs. Willis to Thomas Willis, to one of the children of Esther, of a date subsequent to the alleged gift, and by him placed on record.

The Court charged the Jury, among other things, "that if they believed Mrs. Willis sent Tom Willis, the defendant, to Alabama as *her agent*, for the negro woman Esther, and as such, he went, and brought, and delivered the negro to her, they should find for the plaintiff."

The Jury found for plaintiff.   A new trial was moved—1st. Because the above charge was upon a hypothetical state of facts, not authorized by the evidence.

2d.   Because the verdict was contrary to the weight of evidence.   The new trial was refused, and this decision is assigned as error.

KENAN, for plaintiff in error.

CAMPBELL; McKINLEY, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.]   The only question in this case, requiring more than a moment's consideration, is whether or not there was any evidence which could authorize the charge of the Court to the

Jury, that "if they should believe that his mother got Tom, her son, (the defendant) to go after her negro to Alabama, simply as her agent, with a promise, on her part, to give him the negro at his return, or at her death, then his possession in Alabama and on the way back, was his mother's possession, and did not amount to a delivery, in law; and the gift, or promise to give, was void for want of delivery; and they should find for the plaintiff."

In few words this may be ascertained.

The testimony of Isaac Golden, if credited, showed a positive gift of the slave by Mrs. Willis to her son Thomas. But there was other testimony varying from this—perhaps conflicting—let us see what that proves.

The testimony of Trapp shows that he heard Mrs. Willis say, that she had told Tom, that "if he would go to Alabama for Esther he might have her," and that he went and got her. He also stated, that Mrs. Willis, at the same time, said, "she expected the negro to be Tom's at her death."

Thomas W. Harris swore, that Mrs. Willis died in possession of the slaves in dispute, and he states that, which if it be not contradicted, may be considered as equivalent to a declaration, she had been in possession of these slaves all the time of his acquaintance with her, which was twelve years or more before her death. He further testifies, that he had never heard her say that she had given Esther to Thomas Willis, but that she had given another servant.

Green Jordan testified, that the negroes had been in possession of Mrs. W. for twenty years before her death; that he had heard that Esther had been in Alabama and was brought back by Thomas Willis; but that he had never heard the old lady say anything about the gift, or Tom's claim to the negro.

There was evidence, also, of a gift by deed, from Mrs. Willis to Tom Willis, of one of Esther's children, which he had had recorded in the proper office.

Now let all of these circumstances be considered together. Mrs. Willis had said, that if Thomas Willis would go to Ala-

bama for Esther, he might have her.    He went and got her.
But the slave presently afterwards is found in the possession
of the mother, and, with her children, so continues for many
years, even until the death of Mrs. Willis.    No evidence, (this
is aside from the testimony of Golden, it will be remembered,)
of a personal gift or delivery by the mother to the son, of the
slave Esther, is given.    But it is shown, that she made a sol-
emn gift, by deed, of one of these children to this son, (who,
had the deed recorded, as if he trusted to it for his title,) and
she makes declarations to some of her neighbors inconsistent
with the idea that she had given Esther to her son Thomas.

Considering these circumstances as uncontradicted by any
other testimony in the case, they certainly authorize a pre-
sumption, and that not a weak one, that though Mrs. Willis
had said, that if Thomas would go to Alabama for Esther he
might have her; yet, that though he had gone for her, she
had not kept her promise for some reason, and never had, in
fact, given the slave to him.    If this were so, he went to Ala-
bama as the agent of his mother, took possession as her
agent, and his possession was her possession.

Now this may be contradicted by other testimony in the
case, especially, the testimony of Isaac Golden.    But it was
for the Jury to decide between the conflicting testimony; and
it was the duty of the Court to call their attention to both
views of the case thus presented.    This, we think he did, very
ably and fairly, when he made the charge to which exception
is taken.

[2.] Though the testimony of Isaac Golden be received as
a positive statement, to the effect that Esther had been given,
by Mrs. Willis, to the plaintiff in error, and the other facts
stated, only authorize a presumption to the contrary; yet,
when we look to the character of the conversation testified to
by Golden, occuring some twenty years before; and when we
reflect that the witnesses were all in the presence of the Jury;
that they had the benefit of their demeanor and appearance
at the trial, may have had a knowledge of their characters;
and thus, by preference, have derived their conclusions from

the presumptive evidence; we are not enabled to say, in the language of the Legislature, that "the verdict was decidedly and strongly against the weight of evidence." We cannot, therefore, authorize a new trial.